UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

O.C.,

              Plaintiff,

    v.

ANDREW M. SAUL,

            Defendant.

Case No. 19-cv-03446-LB

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

Re: ECF Nos. 17, 20

## INTRODUCTION

Plaintiff, O.C., seeks judicial review of a final decision by the Commissioner of the Social Security Administration denying her claim for supplemental security income ("SSI") benefits under Title XVI of the Social Security Act ("SSA").[1] The plaintiff moved for summary judgment.[2] The Commissioner opposed the motion and filed a cross-motion for summary judgment.[3] Under Civil Local Rule 16-5, the matter is submitted for decision by this court without oral argument.

---

[1] Mot. – ECF No. 17. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.* at 1.

[3] Cross-Mot. – ECF No. 20.

The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross motion, and remands for further proceedings.

### STATEMENT

1. **Procedural History**

On May 12, 2015, the plaintiff, then age 59, filed an application for social-security disability insurance benefits, alleging carpal-tunnel and disk problems, depression, difficulty concentrating, difficulty standing for more than 20 minutes, lower-back pain, pain when walking, burning feelings in her legs and calf, pain in her neck and shoulders, and numbness in her arms and fingers.[4] She alleged an onset date of February 14, 2015.[5] She last met the insured-status requirements of the Social Security Act on December 31, 2018.[6] The Commissioner initially denied her claim on February 24, 2016,[7] and again on March 28, 2016.[8] On August 6, 2016, the plaintiff asked for a hearing before an Administrative Law Judge ("ALJ").[9] On December 14, 2017, the ALJ held a hearing and heard testimony from the plaintiff (represented by attorney Harvey Sackett), a medical expert ("ME"), and a vocational expert ("VE").[10] The ALJ issued an unfavorable decision on January 30, 2018.[11] On April 11, 2019, the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision.[12]

---

[4] AR 88, 322. Administrative Record ("AR") citations refer to the page numbers in the bottom-right hand corner of the AR.

[5] AR 89.

[6] AR 88.

[7] AR 103.

[8] AR 123.

[9] AR 164.

[10] AR 30–70.

[11] AR 13.

[12] AR 2–4.

The plaintiff timely filed this action on December 18, 2019 and moved for summary judgment, the Commissioner opposed the motion and filed a cross-motion for summary judgment, and the plaintiff replied to the cross-motion.[13] All parties consented to the undersigned's jurisdiction.[14]

## 2.  Summary of the Administrative Record

### 2.1    Medical Evidence

The plaintiff originally alleged that she was disabled due to carpal-tunnel and disk problems, depression, difficulty concentrating, difficulty standing more than 20 minutes, lower-back pain, pain when walking, burning feelings in her legs and calf, pain in her neck and shoulders, and numbness in her arms and fingers.[15] At the administrative hearing, the following records were submitted: records from Marta Banh, O.D., an optometrist who treated the plaintiff for dry eyes and blurry vision;[16] records from Richard Woo, D.P.M., a podiatrist who treated the plaintiff for pain in her heel and toe, performed a partial nail wedge excision, and took X-rays of her foot;[17] records from Daniele Levy, Ph.D., a psychologist who treated the plaintiff on a biweekly basis for depression and grief-related concerns;[18] records from Janele Auranicky, Ph.D., a psychologist who treated the plaintiff on three occasions for depression;[19] records from Marianna Mednikov, Ph.D., a psychologist who treated the plaintiff via diabetes-management group therapy;[20] records from Toby Maurer, M.D., a dermatologist who treated the plaintiff for warts on her finger;[21] records from Yuwen Liao, F.N.P., a nurse practitioner who conducted a stereotactic biopsy examination of

---

[13] Mot. – ECF No. 17; Cross-Mot. – ECF No. 20; Reply – ECF No. 21.

[14] Consent Forms – ECF Nos. 9, 10.

[15] AR 88.

[16] AR 528–34.

[17] AR 518–28.

[18] AR 543–49.

[19] AR 549–59, AR 563–68.

[20] AR 559–63, AR 568–73.

[21] AR 573–579.

the plaintiff's breasts;[22] records from Margaret Monge, F.N.P., a nurse practitioner who physically examined the plaintiff, treated her warts, and conducted blood tests;[23] records from Mark Pederson, M.D., a physician who conducted mammogram examinations;[24] records from Michael Lai, M.D., who conducted a spinal and cervical radiological examination;[25] records from Sumit Kalra, D.O., who conducted a retinal examination;[26] records from Charlene Truong, N.P., a nurse practitioner who conducted a general physical examination and blood tests;[27] records from K. Rudito, M.D., who examined medical evidence to conduct an initial disability-determination evaluation ("DDE");[28] records from G. Lee, M.D., who examined medical evidence to conduct a reconsideration- level DDE;[29] records from Sayed Niknia, M.D., a physician who took cervical-spine, knee, and lumbar spine X-rays and found "moderate degenerative disc disease" at various points in the plaintiff's back;[30] records from Muhannad Hafi, M.D., a physician who conducted a general examination of the plaintiff;[31] and records from Caroline Salvador-Moses, Psy.D., who conducted a comprehensive mental evaluation of the plaintiff.[32]

### 2.2   Disputed Medical Evidence

Because the plaintiff challenges the ALJ's assessment of examining physicians Muhannad Hafi, M.D., and Caroline Salvador-Moses, Psy.D., this order recounts those opinions fully.

---

[22] AR 580–587.

[23] AR 509–17, AR 588–607, AR 610–29.

[24] AR 620–23.

[25] AR 624–25.

[26] AR 535–37.

[27] AR 537–43, AR 608–09.

[28] AR 71–106.

[29] AR 107–42.

[30] AR 465–68.

[31] AR 452–57.

[32] AR 458–64.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### 2.2.1     Muhannad Hafi, M.D. — Examining Physician

On November 19, 2015, Dr. Hafi conducted an internal-medicine evaluation of the plaintiff.[33] He diagnosed the plaintiff with chronic neck pain with radiation to upper extremities, chronic numbness of the bilateral hand, chronic left-foot pain, chronic right-knee pain, memory loss of anterograde nature, depression, and difficulty concentrating.[34] The plaintiff complained of remarkable pain on all ranges of motion and localized tenderness to palpitation of paracervical spine muscles.[35] Dr. Hafi observed that active dorsolumbar motion was possible with pain and tightness.[36] The plaintiff had pain with range of motion for all directions on both shoulders, with a positive left-shoulder impingement sign.[37] Her right knee had a positive finding from a McMurray test with a possible ligament and/or meniscal injury.[38] Dr. Hafi noted a positive finding of left Achilles tendinitis secondary to tenderness on palpitation of the left Achilles tendon.[39] The plaintiff's motor strength was reduced to 4/5 in her upper extremities but remained at 5/5 in her lower extremities.[40] Overall, the plaintiff presented "with generalized musculoskeletal complaints that pertain[ed] to her upper spine with radiation to the upper extremities as well as the lower spine with radiation to the lower extremities with a mixed picture of sensorimotor involvement."[41]

Dr. Hafi assessed the plaintiffs' physical capabilities.[42] The plaintiff should be able to stand and/or walk less than two hours out of an eight-hour workday and sit less than two hours maximum out of an eight-hour workday, and she had "similar restrictions" on her ability to lift or

---

[33] AR 452.

[34] AR 455.

[35] *Id.*

[36] *Id.*

[37] *Id.*

[38] *Id.*

[39] *Id.*

[40] *Id.*

[41] AR 456.

[42] *Id.*

carry weights (up to five pounds occasionally but not lift or carry any weight frequently).[43] She had limited ability to bend, stoop, or crouch.[44] She had manipulative limitations, with less ability to perform fine handling, grasping, and feeling on her left side than on her right.[45]

Dr. Hafi did not make a conclusion about the plaintiff's disability status. He highlighted areas of future medical examination that the plaintiff "deserved," such as "nerve conduction studies of the upper extremities."[46] He said that it would be "imperative and crucial" to review the plaintiff's imaging, such as MRIs.[47] He would need to review the plaintiff's imaging and nerve studies before he could make any decision regarding a disability course.[48]

### 2.2.2    Caroline Salvador Moses, Psy.D. — Examining Psychologist

On December 11, 2015, Dr. Salvador-Moses conducted a comprehensive mental evaluation of the plaintiff "akin" to a psychiatric evaluation.[49] She diagnosed the plaintiff with Major Depressive Disorder, Unspecified Anxiety Disorder, and Bereavement.[50] The plaintiff had a poor fund of information, and her abstract reasoning and short-term memory were "suboptimal."[51] She had poor understanding of her illness and the need for treatment, and she displayed impaired memory.[52] She had symptoms of depressed mood, feelings of hopelessness and helplessness, poor sleep, loss of interest in usual activities, isolation, mood swings, tearfulness, fearfulness, and worries.[53] The plaintiff appeared depressed and tearful for most of the evaluation, and she displayed evidence of psychomotor retardation.[54] She had to "force herself to get out of bed and

[43] *Id.*

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.*

[48] *Id.*

[49] AR 459.

[50] AR 462.

[51] *Id.*

[52] *Id.*

[53] AR 461.

[54] AR 462.

United States District Court
Northern District of California

get dressed."[55] She was unable to walk for long periods of time because her legs became numb and fell asleep.[56] Her neck, arm, and shoulder pains caused her difficulties sleeping.[57]

Dr. Salvador-Moses addressed how these symptoms and diagnoses affected the plaintiff's work-related abilities.[58] There would be "moderate" levels of impairment in the plaintiff's abilities to understand and remember simple instructions, concentrate, and maintain pace.[59] She would be severely impaired in her ability to carry out simple and complex instructions and to make judgments on simple and complex work-related decisions.[60] Socially, she would be severely impaired in her ability to interact appropriately with supervisors, co-workers, and the public.[61] She would be severely impaired in her persistence and her ability to respond appropriately to usual work situations and to changes in a routine work setting.[62]

Dr. Salvador-Moses gave the plaintiff a "[p]oor" prognosis.[63] Like Dr. Hafi, Salvador-Moses acknowledged that her evaluation was "limited in scope."[64] She recommended corroborating the plaintiff's self-reported testimony, which restricted her evaluation.[65]

### 2.3   Non-Medical Evidence

On June 19, 2015, Judy Bardales, the plaintiff's sister, filled out a third-party function report about the plaintiff's condition and her day-to-day activities.[66] Ms. Bardales has known the plaintiff since 1958 and spends between 25 to 35 hours a week with her.[67] The plaintiff showers and

---

[55] AR 461.

[56] *Id.*

[57] *Id.*

[58] AR 463.

[59] *Id.*

[60] *Id.*

[61] *Id.*

[62] *Id.*

[63] AR 462.

[64] *Id.*

[65] *Id.*

[66] AR 359.

[67] *Id.*

dresses herself, prepares breakfast, and does aquatic aerobics three times a week.[68] She does additional daily exercise routines for her shoulders, arms, hands, and neck.[69] She helps to supervise and care for her aging mother.[70] This includes cooking her mother's meals, taking her mother to and from her care provider, and sometimes food shopping and socializing.[71] In addition, the plaintiff does chores around the house, such as laundry, sorting, setting tableware, making beds, and paying bills.[72] These chores typically take 10 to 25 minutes.[73] Others do more demanding chores.[74] At night, the plaintiff watches TV or follows up on emails.[75]

The plaintiff's disabilities impair her ability to do daily activities.[76] Since her symptoms began, she has had to limit herself to shorter intervals (12 to 15 minutes) for her activities.[77] Otherwise, chronic pain prevents further activity for the rest of the day.[78] The plaintiff can no longer lift or hold small or heavy objects, and she needs to wear wrist and hand braces.[79] Her favorite activity used to be painting, but due to her disability, she has been "limited seriously" because she is unable to hold paintbrushes in her hands or stare at a canvas for an extended period of time. [80] She can walk for 10 to 30 minutes before needing to rest, and if she exceeds these time limits, then she needs pain medication.[81] Cognitively, she can pay attention for only 45 to 60 minutes before she

---

[68] *Id.*

[69] *Id.*

[70] *Id.*

[71] *Id.*

[72] AR 361.

[73] *Id.*

[74] *Id.*

[75] AR 360.

[76] AR 363.

[77] *Id.*

[78] *Id.*

[79] AR 364.

[80] AR 366.

[81] AR 364.

loses focus.[82] She can follow simple instructions, but she needs help following more complicated ones.[83] While she handles daily stress well, she hyperventilates and tends to forget important things when stress levels rise.[84] She has difficulty sleeping. Because of her "neck, shoulders, arms [and] hand disabilit[ies]," she uses braces for her hands and arms, and she has to surround herself with pillows to sleep.[85] The plaintiff can sleep for only a few hours, and she must sleep on her back and continue to move from side to side because her arms get numb or painful.[86]

### 3. Administrative Hearing

The plaintiff appeared before the ALJ on December 14, 2017, represented by attorney Harvey Sackett.[87] Also present were Medical Expert ("ME") Henry Urbaniak, M.D., and Vocational Expert ("VE") David Dettmer.[88]

### 3.1 The Plaintiff's Testimony

The plaintiff testified as follows. She is 62 years old and stopped working when she was 59 and has not worked since.[89] The plaintiff left her last job because of pain in her back.[90] The plaintiff last worked at a bakery, where she served coffee and cakes.[91] During this time, she had to stand for the whole day and operate a cash register.[92] She also stocked items but had difficulty bending over.[93] Her job required lifting items such as coffee beans and milk, but she had to do

---

[82] *Id.*

[83] *Id.*

[84] AR 365.

[85] AR 360.

[86] *Id.*

[87] AR 30, 32.

[88] *Id.*

[89] AR 46.

[90] AR 49.

[91] AR 47.

[92] *Id.*

[93] *Id.*

United States District Court
Northern District of California

these tasks "pound by pound" because lifting caused pain in her shoulder, neck, and back.[94] She would often drop items due to pain.[95] Smaller items also were difficult for her to lift.[96] When carrying smaller items, her fingers would get numb, and she would often drop them.[97]

Before her job at the coffee shop, the plaintiff worked for approximately six years at a hair salon.[98] She managed the store and cut hair.[99] Before that, she worked at a cosmetology lab, where she distributed chemicals and products..[100] Before that, she managed a bakery, where she did inventory and spent hours in the freezer, which "was terrible" for her hands, back, and body.[101] She took medication for the pain, which made her forgetful, and ultimately she lost the job.[102] She also managed the men's department at Target.[103] There, she had to stand to do her work, which included stocking and folding clothes and lifting boxes.[104] She had to lift boxes full of clothing.[105] She walked a lot for this job, transporting boxes from the stockroom to the floor.[106] She also worked at a Lucky grocery store as a cake decorator.[107]

The plaintiff testified that she was depressed.[108] Life upsets her because it is so difficult, and she cannot do what she wants to do or is supposed to do.[109] Her inability to work has made her

---

[94] AR 47–48.

[95] AR 49.

[96] AR 50.

[97] *Id.*

[98] *Id.*

[99] *Id.*

[100] AR 51.

[101] AR 52.

[102] *Id.*

[103] AR 53.

[104] AR 54.

[105] *Id.*

[106] AR 55.

[107] AR 55.

[108] AR 56.

[109] *Id.*

United States District Court
Northern District of California

more depressed.[110] Her depression began with her problems with her neck, back, knee, and ankle.[111] She takes Cyclobenzaprine, Meclizine, Omeprazole, Metformin, Gabapentin, Simvastatin, and Hydrocodone as necessary.[112] The medication does not help "too much," and the side effects, including headaches and nausea, are very harmful.[113]

The plaintiff can maintain her home and does cooking, cleaning, and laundry, although she does these tasks "very slowly" (because they are tiring and painful for her) and sometimes cannot keep her place clean.[114] She struggles to complete them due to her leg pain.[115] She can stand for only ten minutes, and thus she struggles to do dishes.[116] She must sit to be comfortable for long periods of time.[117]

### 3.2    Medical-Expert Testimony

ME Henry S. Urbaniak, M.D., a board-certified orthopedic surgeon, reviewed the medical records and testified at the hearing.[118] From a broad overview perspective, Dr. Urbaniak had "a little trouble" determining what the plaintiff's major problem was.[119] To clarify the issue, he asked the plaintiff several questions.[120] The plaintiff testified that her "biggest problem" was the "shooting pain" she felt when standing up.[121] When asked whether she experienced pain when sitting, the plaintiff responded that she could not sit for too long because she experienced "spasms" and a feeling "like something is crawling" in her legs.[122] When asked whether she had

---

[110] *Id.*

[111] *Id.*

[112] AR 57.

[113] *Id.*

[114] AR 58.

[115] *Id.*

[116] AR 59.

[117] *Id.*

[118] AR 34.

[119] *Id.*

[120] *Id.*

[121] AR 34–35.

[122] AR 35.

pain when she slept at night, the plaintiff responded that she could not sleep the whole night because she needed to move around and pad herself with pillows.[123] Dr. Urbaniak asked about the plaintiff's work history.[124] The plaintiff described her difficulties with her jobs, including dropping items, her difficulty with lifting, and pain that required her to take medication between breaks and lunches, which eventually required her to quit.[125]

Dr. Urbaniak observed "some degenerative changes" in the lumbar spine.[126] He said that "moderate degenerative changes" were not "a listing" that qualified as a disability.[127] The only "real data" he had were the plaintiff's subjective complaints about pain in her neck, back, and shoulder.[128] Considering these complaints and the medical records, he estimated that the plaintiff's residual-functioning capacity ("RFC") was "somewhere between sedentary and light residual function capacity."[129] He reiterated that it was "very difficult" to assess the plaintiff's RFC because there was so little data in her chart.[130] Objectively, given the available record, she had no listing.[131] But, even if he opined that she could do sedentary work, that finding would be based on subjective, rather than objective, data.[132]

Dr. Urbaniak expressed little faith in certain observations expressed in other medical records. In reference to Dr. Hafi's finding of a positive-impingement sign, Dr. Urbaniak said that it was unclear how Dr. Hafi reached that conclusion given that nobody else did.[133] He was skeptical of the positive McMurray test and the positive finding of Achilles tendonitis.[134] He said that it would

---

[123] *Id.*

[124] AR 36.

[125] AR 36–37.

[126] AR 37.

[127] AR 38.

[128] AR 37.

[129] AR 39.

[130] *Id.*

[131] *Id.*

[132] AR 39–40.

[133] AR 42.

[134] AR 42–43.

be difficult to attribute pain in the ankle to Achilles tendonitis, and that any finding of Achilles tendonitis from an internist's observation "doesn't substantiate anything."[135] He concluded that the plaintiff was "banking on an internist [who was] not doing a good job," and thus he decided not to cite Dr. Hafi's observational findings.[136] He reiterated his finding of moderate degenerative changes of the lumbar spine.[137] He concluded that "it could be" reasonable for somebody to have chronic pain in their lower back from this spinal assessment.[138]

### 3.3   Administrative Findings

The ALJ undertook the five-step process to determine whether the plaintiff was disabled and concluded that she was not.[139]

At step one, the ALJ found that the plaintiff had not engaged in substantial gainful activity during the period from her alleged onset date of February 14, 2015 through her last insured date of June 30, 2019.[140]

At step two, the ALJ found the following severe impairments: degenerative-disk disease of the cervical and lumbar spine and osteoarthritis of the right knee.[141] She concluded that these impairments could significantly limit plaintiff's ability to perform basic work activities.[142]

The ALJ also observed other impairments, including type II diabetes and a depressive disorder.[143] She found that the plaintiff's diabetic condition was under control through diet and exercise, as the plaintiff worked out at a gym, walked and did aquatic Zumba classes.[144] Although

---

[135] AR 43–44.

[136] AR 44.

[137] AR 45.

[138] *Id.*

[139] AR 17.

[140] AR 18.

[141] *Id.*

[142] *Id.*

[143] AR 19.

[144] *Id.*

some objective medical evidence supported a diabetic condition, the ALJ determined that this did not cause significant limitations in the claimant's ability to perform basic work functions.[145]

To assess the plaintiff's depressive disorder, the ALJ considered the "Paragraph B" criteria.[146] The plaintiff had mild limitations in understanding, remembering, or applying information.[147] The plaintiff had mild limitations with regard to concentrating, persisting, or maintaining pace.[148] The plaintiff had mild limitations in her ability to interact with others.[149] The plaintiff had mild limitations in adapting and managing herself.[150] The ALJ gave little weight to Dr. Salvador-Moses's findings because the ALJ determined that her finding of mostly severe and some moderate limitations was "completely inconsistent" with the plaintiff's functioning, as there was no supportive evidence of a 12-month period of severe mental impairment.[151] The ALJ assigned great weight to the opinion of Dr. H. Amado, the state-agency consultant, who found that plaintiff had a non-severe affective disorder with mild limitations in all areas and based his opinion on the medical record, which showed that the plaintiff had no current treatment sources, possessed an active driver's license, lived alone, and had worked for many years, only stopping work due to a lay-off.[152] Evaluating the medical record against the elements of the "Paragraph B" criteria, the ALJ found that the plaintiff's depressive disorder did not cause a more-than-minimal limitation on her ability to perform mental-work activities and was therefore non-severe.[153]

At step three, the ALJ determined that the plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

---

[145] Id.

[146] Id.

[147] Id.

[148] Id.

[149] Id.

[150] Id.

[151] Id.

[152] AR 20.

[153] AR 19.

United States District Court
Northern District of California

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)."[154]

The ALJ then determined the plaintiff's RFC.[155] She considered the plaintiff's symptoms and the extent to which they reasonably were consistent with the objective medical evidence and other evidence.[156] She followed a two-step process.[157] First, she determined that the plaintiff's medically determinable impairments could reasonably cause the alleged symptoms.[158] Second, she found that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."[159] The ALJ concluded that the "evidence as a whole" indicated that the plaintiff was capable of performing "less than a full range of light exertional work, despite her complaints of constant pain, leg pain, numbness, poor memory and difficulty maintaining her concentration."[160]

In making this determination, the ALJ recounted the examination of the ME, Dr. Urbaniak.[161] She emphasized his finding that there was "little evidence other tha[n] the x-ray reports that document moderate degenerative changes to the lumbar spine and moderate osteoarthritis to the right knee."[162] The ME also noted "a normal gait" and the absence of an objective record of ailments.[163] He did not credit the positive McMurray test, Achilles tendonitis, or degenerative changes in the lumbar spine because they were not supported by objective evidence.[164] Because the ME considered the evidence in the record, and formed an opinion by medical evidence, the

---

[154] AR 20.

[155] *Id.*

[156] *Id.*

[157] *Id.*

[158] *Id.*

[159] AR 21.

[160] *Id.*

[161] AR 22.

[162] AR 22–23.

[163] AR 23.

[164] *Id.*

United States District Court
Northern District of California

ALJ assigned "full weight" to his opinion that "there was nothing in the medical record to support less than modified light residual functioning capacity."[165]

Next, the ALJ considered the opinion of state-agency consultant G. Lee, M.D. that the plaintiff "could lift and carry 50 pound occasionally and 25 pound frequently, sit, stand or walk about 6 hours out of an 8-hour workday; frequently climb ramps/stairs, balance, stoop, kneel, crouch and crawl and occasional reaching overhead with the left upper extremity and frequent handling and fingering with the bilateral upper extremities."[166] The ALJ assigned "only some" weight to this opinion because the objective evidence indicated "more exertional and postural limitations."[167]

The ALJ also considered the opinion of consultative examiner Dr. Hafi that the plaintiff "could stand and/or walk less than 2 hours out of an 8-hour workday, despite not using any assistive device, sit less than 2 hours maximum out of an 8-hour workday; lift or carry weights [up to] 5 pounds occasionally; she should not lift or carry any weight frequently; she has limited ability to bend, stoop, or crouch; and manipulative limitation include (pronounced on the left) with less ability to perform fine handling, grasping, and feeling on the left than on the right; and with equal ability of reaching bilaterally."[168] The ALJ assigned "little weight" to this opinion because Dr. Hafi relied heavily on subjective complaints.[169] Furthermore, the ALJ determined that these extreme limitations were not consistent with Dr. Hafi's own findings, which documented slightly reduced motor strength in the upper extremities and full motor strength in the lower extremities.[170]

The ALJ concluded that the plaintiff had the residual functional capacity to perform "less than a full range of light exertional work."[171]

---

[165] *Id.*

[166] *Id.*

[167] *Id.*

[168] *Id.*

[169] *Id.*

[170] *Id.*

[171] AR 21.

United States District Court
Northern District of California

At step four, the ALJ concluded that the plaintiff was capable of performing past relevant work as a stock-control clerk, fast-food worker, beauty-shop manager, cake decorator, and retail-store manager.[172] The ALJ determined that the plaintiff's RFC did not prevent this work.[173]

At step five, the ALJ found the following:

> The [VE] testified that the claimant has past relevant work as stock control clerk, (DOT#219.387-030) at the light exertional level with SVP5 rating; fast food worker, (DOT#311.472-010) at the medium-light exertional level with SVP2 rating; beauty shop manager, (DOT#l87.167-058) at the light exertional level with SVP7 rating; cake decorator, (DOT#524.381-010) at the light exertional level with SVP6 rating and retail store manager, (DOT# l85.167-046) at the light exertional level with SVP5/7 rating and home health aide, (DOT#354.377-014) at the medium exertional level with SVP3 rating. The [VE] testified that the claimant could perform all of her past work except for the home health aide since the exertional demands of that work exceed the residual functional capacity.[174]

The ALJ compared the plaintiff's RFC with the physical and mental demands of this work and determined that the plaintiff was able to perform these tasks as actually and generally performed.[175] The ALJ thus concluded that the plaintiff was "not disabled" under sections 216(i), 223(d), and 1614(a)(3)(A) of the Social Security Act.[176]

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), district courts have jurisdiction to review any final decision of the Commissioner if the claimant initiates a suit within sixty days of the decision. A court "may set aside the Commissioner's denial of benefits when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (cleaned up); 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th

---

[172] AR 24.

[173] *Id.*

[174] *Id.*

[175] *Id.*

[176] *Id.*

Cir. 1995). The reviewing court should uphold "such inferences and conclusions as the [Commissioner] may reasonably draw from the evidence." *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). If the evidence in the administrative record supports the ALJ's decision and a different outcome, the court must defer to the ALJ's decision and may not substitute its own decision. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). "Finally, [a court] may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

## GOVERNING LAW

A claimant is considered disabled if (1) he suffer from a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months," and (2) the "impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. § 1382c(a)(3)(A) & (B). The five-step analysis for determining whether a claimant is disabled within the meaning of the Social Security Act is as follows.

**Step 1.** Is the claimant presently working in a substantially gainful activity? If so, then the claimant is "not disabled" and is not entitled to benefits. If the claimant is not working in a substantially gainful activity, then the claimant's case cannot be resolved at step one, and the evaluation proceeds to step two. *See* 20 C.F.R. § 404.1520(a)(4)(i).

**Step 2.** Is the claimant's impairment (or combination of impairments) severe? If not, the claimant is not disabled. If so, the evaluation proceeds to step three. *See* 20 C.F.R. § 404.1520(a)(4)(ii).

**Step 3.** Does the impairment "meet or equal" one of a list of specified impairments described in the regulations? If so, the claimant is disabled and is entitled to benefits. If the claimant's impairment does not meet or equal one of the impairments listed in the regulations, then the case cannot be resolved at step three, and the evaluation proceeds to step four. *See* 20 C.F.R. § 404.1520(a)(4)(iii).

**Step 4.** Considering the claimant's RFC, is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled and is not entitled to benefits. If the claimant cannot do any work he or she did in the past, then the case cannot be resolved at step four, and the case proceeds to the fifth and final step. *See* 20 C.F.R. § 404.1520(a)(4)(iv).

**Step 5.** Considering the claimant's RFC, age, education, and work experience, is the claimant able to "make an adjustment to other work?" If not, then the claimant is disabled and entitled to benefits. *See* 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is able to do other work, the Commissioner must establish that there are a significant number of jobs in the national economy that the claimant can do. There are two ways for the Commissioner to show other jobs in significant numbers in the national economy: (1) by the testimony of a vocational expert or (2) by reference to the Medical-Vocational Guidelines at 20 C.F.R., part 404, subpart P, app. 2.

*Tackett*, 180 F.3d at 1098 (citing 20 C.F.R. § 404.1520).

For steps one through four, the burden of proof is on the claimant. At step five, the burden shifts to the Commissioner. *Gonzales v. Sec'y of Health & Human Servs.*, 784 F.2d 1417, 1419 (9th Cir. 1986).

## ANALYSIS

The plaintiff contends that the ALJ erred by (1) rejecting the opinion of her examining physicians, (2) rejecting her testimony, (3) rejecting her sister's testimony, and (4) failing to support the step-four finding sufficiently.[177] The court grants the plaintiff's motion for summary judgment, denies the Commissioner's cross-motion for summary judgment, and remands the case for further review.

### 1. Whether the ALJ Properly Weighed Medical Evidence

#### 1.1    Legal Standard

The ALJ is responsible for "'resolving conflicts in medical testimony, and for resolving ambiguities.'" *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014) (quoting *Andrews*, 53 F.3d at 1039). In weighing and evaluating the evidence, the ALJ must consider the entire case record, including each medical opinion in the record, together with the rest of the relevant evidence. 20 C.F.R. § 416.927(b); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (cleaned up).

---

[177] Mot. – ECF No. 17 at 11–19.

"In conjunction with the relevant regulations, [the Ninth Circuit has] developed standards that guide [the] analysis of an ALJ's weighing of medical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008) (citing 20 C.F.R. § 404.1527).[178] Social Security regulations distinguish between three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing [non-examining] physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (citing *Lester*, 81 F.3d at 830); *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).

"To reject [the] uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." *Ryan*, 528 F.3d at 1198 (alteration in original) (cleaned up). By contrast, if the ALJ finds that the opinion of a treating or examining physician is contradicted, a reviewing court will require only that the ALJ provide "specific and legitimate reasons supported by substantial evidence in the record." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (cleaned up); *see Garrison*, 759 F.3d at 1012 ("If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.") (cleaned up). "The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record." *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

An ALJ errs when she "rejects a medical opinion or assigns it little weight" without explanation or without explaining why "another medical opinion is more persuasive, or criticiz[es] it with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison*, 759 F.3d at 1012–13. "[F]actors relevant to evaluating any medical opinion, not limited to the opinion of the treating physician, include the amount of relevant evidence that supports the

---

[178] The Social Security Administration promulgated new regulations, including a new § 404.1521, effective March 27, 2017. The previous version, effective to March 26, 2017, applies here. *See* 20 C.F.R. § 404.614(a).

opinion and the quality of the explanation provided[,] the consistency of the medical opinion with the record as a whole[, and] the specialty of the physician providing the opinion. . . ." *Orn*, 495 F.3d at 631 (citing 20 C.F.R. § 404.1527(d)(3)–(6)); *see also Magallanes v. Bowen*, 881 F.2d 747, 753 (9th Cir. 1989) (an ALJ need not agree with everything contained in the medical opinion and can consider some portions less significant than others).

### 1.2   Dr. Hafi

The plaintiff alleges that the ALJ erred when she assigned little weight to the opinion of Dr. Hafi, a consultative examiner who conducted an internal-medicine evaluation of the plaintiff on November 19, 2015.[179] The court remands on this ground.

Dr. Hafi diagnosed the plaintiff with chronic neck pain, chronic numbness of the bilateral hand, chronic left-foot pain, chronic right-knee pain, memory loss, depression, and difficulty concentrating.[180] Dr. Hafi opined that the plaintiff should be able to sit, stand, and/or walk for less than two hours out of an eight-hour workday.[181] She had "similar restrictions" on her ability to lift or carry weights, should carry only up to five pounds occasionally, and should not lift or carry any weight frequently.[182] He found manipulative limitations, with less ability to perform fine handling, grasping, and feeling on her left side.[183] The ALJ assigned "little weight" to this opinion because Dr. Hafi relied heavily on subjective complaints and never reviewed any medical records.[184] The ALJ said the following:

> The undersigned gives little weight to this opinion as Dr. Hafi relied heavily on the claimant's subjective complaints and never reviewed any medical records. In fact, Dr. Hafi pointed out that it was imperative and crucial to review imaging, specifically an MRI of the neck. The extreme limitations are not consistent with Dr. Hafi's own findings, which document slightly reduced motor strength in the upper extremities but full in the lower extremities. Normal sensory exam to pinprick, vibration, position and touch. The cervical and lumbar spine had some pain on all ranges of motion but the claimant had no problem

---

[179] *Id*. at 12–13.

[180] AR 455.

[181] AR 456.

[182] *Id*.

[183] *Id*.

[184] AR 23.

United States District Court
Northern District of California

squatting, limp was absent, negative Romberg, no ataxia, normal posture and walking was within normal limits (Exhibit 5F/5).[185]

At minimum, the ALJ was required to give specific and legitimate reasons supported by substantial evidence to discount Dr. Hafi's opinions. *See Garrison*, 759 F.3d at 1012. Although the ALJ provided specific reasons, they were not supported by substantial evidence and were not a "legitimate" reason to reject Dr. Hafi's opinion.

First, the ALJ erred by discounting Dr. Hafi's opinion on the ground that it was based on subjective reports. In *Belanger v. Berryhill*, the Ninth Circuit found that it was error for an ALJ to reject the opinion of a treating physician because it was purportedly "inconsistent with the record as a whole," and it "appeared to be based on [the plaintiff's] subjective reporting of pain." 685 Fed. Appx. 596, 598 (9th Cir. 2017). Here, the ALJ's critique was similarly "boilerplate criticism." *Id*. Dr. Hafi did not reach a conclusion about the plaintiff's disability status and said that it would be crucial to review the plaintiff's imaging and nerve studies first.[186] Also, the ALJ gave Dr. Hafi's opinion little weight, even though he offered it based on the information provided to him, but she gave "full weight" to the ME's opinion, which similarly was based on what he characterized as a subjective medical record was subjective.[187]

Second, Dr. Hafi's findings were supported by other medical evidence. Dr. Hafi observed that the plaintiff had chronic pain in her neck, remarkable pain on all ranges of motion, and localized tenderness to palpitation of paracervical spine muscles.[188] Furthermore, Dr. Hafi observed pain with dorsolumbar motion, in part on the plaintiff's self-reporting.[189] The court has held that an ALJ may reject a treating physician's opinion if it is based "to a large extent" on a claimant's self-reports that have been properly discounted as incredible. *Tomasetti v. Astrue* 533 F.3d 1035, 1041 (9th Cir. 2008). But that is not the case here. Dr. Hafi's findings are consistent with X-rays taken after Dr. Hafi's examination, which showed moderate degenerative-disc disease at C–6, and an X-

---

[185] *Id*.

[186] AR 456.

[187] AR 39–40.

[188] AR 455.

[189] *Id*.

ray of Cortez's lumbar spine, which revealed moderate degenerative-disc disease at T12–L1, L1–2, L4–5, and L5–S1, and which support Dr. Hafi's conclusions.[190] The ME, who was skeptical of Dr. Hafi's opinion, and whose opinion the ALJ assigned "full weight," acknowledged that it could be reasonable for someone to have chronic pain in her lower back because of moderate degenerative changes in her lumbar spine.[191]

In sum, the ALJ did not provide specific and legitimate reasons based on substantial evidence when assigning "little weight" to Dr. Hafi's opinion. The court remands for reconsideration.

### 1.3   Dr. Salvador-Moses

The plaintiff alleges that the ALJ erred by assigning little weight to the opinion of Dr. Salvador-Moses, a consultative examiner who conducted a psychiatric evaluation of the plaintiff on December 11, 2015.[192] The court remands on this ground.

The ALJ assigned "little weight" to this opinion on the ground that Dr. Salvador-Moses's findings were "overly restrictive" and "completely inconsistent" with the plaintiff's own report:[193]

> Although the consultative psychologist, Caroline Salvador-Moses, Psy.D., found mostly severe and some moderate limitations the undersigned finds this overly restrictive and completely inconsistent with this claimant's functioning as per her own report (Exhibit 6F). The claimant was not taking any psychotropic medication and only began doing so two months ago prior to the hearing. The evidence does not support presence of any 12-month period of a severe mental impairment. For this reason, little weight is given this opinion.[194]

At minimum, the ALJ was required to give specific and legitimate reasons supported by substantial evidence to discount Dr. Salvador-Moses's opinions. *See Garrison*, 759 F.3d at 1012. The ALJ did not. She held that Dr. Salvador-Moses's were inconsistent with the plaintiff's own report.[195] This was error. Dr. Salvador-Moses diagnosed the plaintiff with Major Depressive

---

[190] AR 466–67.

[191] AR 45.

[192] Mot. – ECF No. 17 at 9.

[193] AR 19–20.

[194] *Id.*

[195] *Id.*

United States District Court
Northern District of California

Disorder, unspecified Anxiety Disorder, and Bereavement.[196] The plaintiff had symptoms of depressed mood, feelings of hopelessness and helplessness, poor sleep, loss of interest in usual activities, isolation, mood swings, tearfulness, fearfulness, and worries.[197] During the evaluation, the plaintiff appeared depressed and was tearful and displayed evidence of psychomotor retardation.[198] Dr. Salvador-Moses found "severe" limitations in the plaintiff's ability to carry simple or complex instructions, make judgments on simple or complex work-related decisions, understand, remember, carry out complex instructions, make judgments on complex work-related decisions, interact appropriately with supervisors, coworkers, and the public, persist, and respond appropriately to usual work situations and changes in a routine work setting.[199] These findings are consistent with the plaintiff's administrative-hearing testimony and her function report, where she identified depression and difficulties carrying out tasks associated with work.[200]

The ALJ also relied on the lack of prior medical treatment in her decision to assign little weight to Dr. Salvador-Moses's opinion.[201] This too was error. Social Security Ruling 16-3p states that when considering treatment history, the ALJ may consider whether "an individual may not understand the appropriate treatment for or the need for consistent treatment of [their] impairment" and whether "an individual may not be aware that [they have] a disorder that requires treatment."[202] The plaintiff's lack of understanding should be considered here. Dr. Salvador-Moses noted that the plaintiff demonstrated poor understanding of her illness and the need for treatment.[203]

---

[196] AR 462.

[197] AR 461.

[198] AR 462.

[199] AR 463.

[200] AR 46–59; 367–75.

[201] *Id.*

[202] S.S.R. 16-3p.

[203] AR 462.

The ALJ also supported her conclusion by reference to the plaintiff's daily activities.[204] The Ninth Circuit has held that "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits . . . and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (citation omitted). "{D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." *Reddick*, 157 F.3d at 722. The daily activities cited by the ALJ — visiting family, preparing meals, taking walks, and attending medical appointments and church services — are not a specific and legitimate reason to reject Dr. Salvador-Moses's opinion that the plaintiff had severe limitations in several areas relevant to diagnosing her mental health.[205]

The court remands the issue for reconsideration.

### 1.4   Dr. Urbaniak

The plaintiff argues that the ALJ mischaracterized the testimony of the ME, Dr. Urbaniak.[206] The court remands on this ground.

The ALJ held the following regarding Dr. Urbaniak's testimony:

> Based on his review of the medical record and questions posed to the claimant, Dr. Urbaniak found that the opinion provided by the consultative examiner was based on both the claimant's subjective reports and objective findings. In fact, the medical record is based mostly on the claimant's subjective complaints except for the moderate findings on the x-rays. He pointed out that the consultative examiner emphasized that it was "imperative" to review any MRI scans. Further, Dr. Urbaniak testified that he could not give credence to the positive McMurray or the Achilles tendonitis or the degenerative changes in the lumbar spine found at Exhibit llF/139-140. He opined that there was nothing in the medical record to support a less than modified light residual functional capacity. The undersigned affords full weight to this opinion since Dr. Urbaniak has an awareness of the evidence in the record, and has an understanding of social security disability programs and evidentiary requirements. Most importantly, his opinion is reasonable because the medical record supports it.[207]

---

[204] AR 19–20.

[205] AR 19.

[206] Mot. – ECF No. 17 at 10.

[207] AR 23.

The ALJ relied on select portions of Dr. Urbaniak's testimony in assigning it great weight. This was an error. In *Perry v. Colvin*, the court held that it was an error for an ALJ to fail to address parts of a medical opinion, to which he had assigned great weight, when those parts spoke "directly to Plaintiff's ability to work — at least, to maintain employment." No. 14-cv-01411-JSC, 2015 WL 1090420, at *12 (N.D. Cal. March 12, 2015) (citing *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1008, 1012 (9th Cir. 2003)). Dr. Urbaniak acknowledged that it could be "reasonable" that someone could have chronic pain in their lower back because of moderate degenerative changes in the lumbar spine.[208] He also said that "even saying [that the plaintiff] could do sedentary work [would be] based on subjective findings, not objective findings."[209] He never came to an explicit conclusion about the plaintiff's disability status and explained that it would be "difficult" to evaluate the plaintiff's RFC with the limited data in the chart.[210] By failing to acknowledge these elements of the testimony while assigning great weight to other testimony, the ALJ erred and mischaracterized Dr. Urbaniak's testimony.[211]

Because the court remands for reconsideration of the medical evidence, and medical evidence was a factor in the ME's testimony, the court remands on this ground too.

### 2.   Whether the ALJ Erred by Rejecting the Plaintiff's Testimony

The plaintiff argues that the ALJ improperly rejected her testimony.[212] Because the ALJ discounted the plaintiff's testimony in part based on her assessment of the medical opinions in the last section, the court remands on this ground too.

In assessing a claimant's credibility, an ALJ must make two determinations. *Molina*, 674 F.3d at 1112. "First, the ALJ must determine whether [the claimant has presented] 'objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or

---

[208] AR 45.

[209] AR 39–40.

[210] AR 39.

[211] *See* Mot. – ECF No. 17 at 10.

[212] Mot. – ECF No. 17 at 11.

United States District Court
Northern District of California

other symptoms alleged.'" *Id.* (quoting *Vasquez*, 572 F.3d at 591). Second, if the claimant

produces that evidence, and "there is no evidence of malingering," the ALJ must provide

"specific, clear and convincing reasons for" rejecting the claimant's testimony regarding the

severity of the claimant's symptoms. *Id.* (cleaned up). "At the same time, the ALJ is not 'required

to believe every allegation of disabling pain, or else disability benefits would be available for the

asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A).'" *Id.* at 1112 (quoting *Fair v. Bowen*,

885 F.2d 597, 603 (9th Cir. 1989)). "Factors that an ALJ may consider in weighing a claimant's

credibility include reputation for truthfulness, inconsistencies in testimony or between testimony

and conduct, daily activities, and unexplained, or inadequately explained, failure to seek treatment

or follow a prescribed course of treatment." *Orn*, 495 F.3d at 636 (cleaned up). "[T]he ALJ must

identify what testimony is not credible and what evidence undermines the claimant's complaints."

*Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (quotation omitted); *see, e.g.*, *Morris v.

Colvin*, No. 16-CV-0674-JSC, 2016 WL 7369300, at *12 (N.D. Cal. Dec. 20, 2016).

 The ALJ concluded the following concerning the plaintiff's testimony:

> After careful consideration of the evidence, the undersigned finds that the claimant's
> medically determinable impairments could reasonably be expected to cause the alleged
> symptoms; however, the claimant's statements concerning the intensity, persistence and
> limiting effects of these symptoms are not entirely consistent with the medical evidence
> and other evidence in the record for the reasons explained in this decision.[213]

The ALJ discredited the plaintiff's testimony, in part, based on her assessment of the medical-

opinion evidence.[214] Because the court remands for reconsideration of that medical evidence, the

court remands on this ground too. The ALJ can reassess the plaintiff's credibility in context of the

entire record.

---

[213] AR 21.

[214] *Id.*

### 3.   Whether the ALJ Erred by Rejecting Third-Party Testimony

The plaintiff argues that the ALJ improperly discounted the testimony of the plaintiff's sister, Ms. Bardales.[215] More specifically, the plaintiff argues that "[t]he ALJ did not mention this statement in the record or give any reasons for rejecting the limitations Ms. Bardales described."[216] The court remands on this ground.

The ALJ must consider "other source" testimony and evidence from a layperson. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014); *Molina*, 674 F.3d at 1111; *Bruce v. Astrue*, 557 F.3d 1113, 1115 (9th Cir. 2009) ("In determining whether a claimant is disabled, an ALJ must consider lay witness testimony concerning a claimant's ability to work") (cleaned up). "Descriptions by friends and family members in a position to observe a claimant's symptoms and daily activities have routinely been treated as competent evidence." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). This kind of lay witness testimony "is competent evidence and therefore cannot be disregarded without comment." *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996) (cleaned up). Moreover, if an ALJ decides to disregard the testimony of a lay witness, the ALJ must provide "specific" reasons that are "germane to that witness." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (internal citations omitted). The Ninth Circuit has not "required the ALJ to discuss every witness's testimony on an individualized, witness-by-witness basis." *Molina*, 674 F.3d at 1114. An ALJ may "point to" reasons already stated with respect to the testimony of one witness to reject similar testimony by a second witness. *Id.*

Ms. Bardales testified that the plaintiff's disabilities impaired her ability to do daily activities, in part because of pain that results from physical activities such as chores and in part because of the plaintiff's cognitive limitations.[217] The ALJ did not address any of this testimony. The Ninth Circuit has held that if an ALJ decides to disregard the testimony of a lay witness, he must provide "specific" reasons that are "germane to that witness." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir.

---

[215] Mot. – ECF No. 17 at 14.

[216] *Id.*

[217] AR 363–64.

2007) (internal citations omitted). The Commissioner contends that the ALJ did not need to address Ms. Bardales's testimony because she did not describe any limitations beyond those that the plaintiff described.[218] While the ALJ need not address witness testimony if she rejects similar testimony from a different witness, *see Molina*, 674 F.3d at 1114, those circumstances do not exist here. Ms. Bardales's testimony regarding the plaintiff's disabilities exceeded the plaintiff's account. Because the court remands on other grounds, the court remands on this issue too.

### 4.  Whether the ALJ's Step 4 Finding was Sufficiently Supported by Evidence

The plaintiff contends that the ALJ's findings at step four were not supported by substantial evidence because the ALJ "omitted from the vocational hypothetical Cortez's credible allegations, the limitations assessed by Cortez's examining doctors, Dr. Hafi and Dr. Salvador-Moses, and the limitations described by the lay witness."[219] At step four, the ALJ concluded that the plaintiff's RFC did not preclude past relevant work as a stock control clerk, fast-food worker, beauty-shop manager, cake decorator, and retail-store manager.[220] Because the court remands for a reweighing of medical-opinion evidence, the plaintiff's testimony, and third-party testimony, and because the RFC was based on the medical record, the court remands on this ground.

### 5.  Remand for Further Proceedings

The court has "discretion to remand a case either for additional evidence and findings or for an award of benefits." *McCartey v. Massanari*, 298 F.3d 1072, 1076 (9th Cir. 2002) (citation omitted); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989) ("The decision whether to remand for further proceedings or simply to award benefits is within the discretion of [the] court.") (citation omitted). Generally, "'[i]f additional proceedings can remedy defects in the original administrative proceeding, a social security case should be remanded.'" *Garrison*, 759 F.3d at

---

[218] Cross-Mot. – ECF No. 20 at 9.

[219] Mot. – ECF No. 17 at 15.

[220] AR 24.

1019 (quotation omitted); *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015)

("Unless the district court concludes that further administrative proceedings would serve no useful

purpose, it may not remand with a direction to provide benefits."); *McCartey*, 298 F.3d at 1077.

The court remands for further proceedings.

## CONCLUSION

The court grants the plaintiff's motion, denies the Commissioner's cross-motion, and remands

for further proceedings consistent with this order.

**IT IS SO ORDERED.**

Dated: August 31, 2020

_____

LAUREL BEELER
United States Magistrate Judge